**UNITED STATES of America, Plaintiff—Appellee,**

v.

**John Wayne ZIDAR, Defendant—Appellant.**

**No. 03–30340.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2006.

Decided May 3, 2006.

---

**1.** Illegal Immigration Reform and Immigration Responsibility Act, Pub.L. 104–208, Div.

C., Title III, 110 Stat. 3009 (Sept. 30, 1996).

Andrew C. Friedman, Esq., Office of the U.S. Attorney, Seattle, WA, for Plaintiff–Appellee.

Matthew F. Pfefer, Esq., Caruso Law Offices, Spokane, WA, for Defendant–Appellant.

Before: T.G. NELSON, GOULD, and BEA, Circuit Judges.

MEMORANDUM *

John Wayne Zidar appeals his conviction by jury verdict and the sentence imposed by the district court. A federal grand jury charged Zidar with promoting a Ponzi scheme that swindled more than $79 million from about two thousand persons.[1] After a month-long trial, a jury found Zidar guilty of: conspiracy to commit mail fraud; conspiracy to commit wire fraud; conspiracy to commit money laundering; seven counts of mail fraud; seven counts of wire fraud; and nine counts of money laundering. The district court sentenced Zidar to a thirty-year term of incarceration.

Zidar challenges the district court's decision to deny two pretrial motions: a motion to suppress evidence; and a motion to dismiss the indictment. He also challenges the district court's decision not to hold an evidentiary hearing on the motion to suppress. Zidar filed both motions long after the pretrial motions deadline established by the district court under Federal

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. Because the parties are familiar with the facts and the procedural history underlying this appeal, we mention them only where necessary to explain our decision.

Rule of Criminal Procedure 12(c). The district court denied both motions as untimely, without reaching the merits.[2]

■ Zidar's motions were untimely, and accordingly he waived his right to seek relief in them. FED. R.CRIM. P. 12(e). The district court did not abuse its discretion by denying Zidar's untimely motions, so we need not consider whether either motion should have been granted on the merits.[3] *See United States v. Torres,* 908 F.2d 1417, 1424 (9th Cir.1990); *United States v. Davis,* 663 F.2d 824, 831 (9th Cir.1981). Nor did the district court abuse its discretion by ruling on Zidar's untimely motion to suppress without an evidentiary hearing. *See United States v. Maher,* 645 F.2d 780, 783 (9th Cir.1981) (per curiam).

■ Shortly before trial, Zidar's counsel told the government and the district court that he intended to ask federal employees whom the government planned to call as witnesses whether they would qualify for a monetary bonus if Zidar was convicted. In Zidar's view, this testimony was relevant to credibility and bias. The district court, however, prohibited this line of questioning as irrelevant, unless Zidar could prove that the government paid bonuses to its employees based on favorable trial outcomes. On appeal, Zidar contends that this ruling violated his right to confront the witnesses against him.[4] We disagree.

The Confrontation Clause does not require a district court to permit cross examination on irrelevant issues. *See United States v. Changa,* 901 F.2d 741, 743 (9th Cir.1990) (per curiam). We have recognized that "[p]ecuniary interest may be shown to prove bias." *United States v. Harris,* 185 F.3d 999, 1008 (9th Cir.1999). But absent any reasonable basis shown to the district court in the extensive pretrial proceedings that a government employee could earn a bonus by facilitating a conviction, testimony about government bonuses would not have been relevant to either the pertinent witnesses' potential biases, or their credibility. The district court did not err by excluding this line of questioning. *See United States v. Castellanos–Garcia,* 270 F.3d 773, 777 (9th Cir.2001).

■ During direct examination, a witness for the government testified that he had seen newspaper articles stating that Anne Phillips, a witness for the government, had been "caught" because she was "in the money laundering and narco[tics] traffic." The record, however, does not show that Phillips, one of Zidar's former colleagues, had ever been arrested for narcotics trafficking. The government, in colloquy with the district court and Zidar's counsel, said that her arrest was related to Zidar's Ponzi scheme, and Zidar presented no contrary evidence. The government asked the district court to tell the jury that Phillips had not been arrested for narcotics trafficking, and the district court invited the government to prepare a proposed instruction. Before the district

2. We review a district court's decision to deny an untimely motion for abuse of discretion. *See United States v. Booker,* 952 F.2d 247, 249 (9th Cir.1991) (per curiam). We also review a district court's decision whether to conduct an evidentiary hearing regarding the merits of a motion to suppress for abuse of discretion. *See United States v. Howell,* 231 F.3d 615, 620 (9th Cir.2000).

3. Because we do not reach the merits of Zidar's motion to suppress, we deny his request for judicial notice as irrelevant. *See In re Knight,* 207 F.3d 1115, 1119 n. 4 (9th Cir. 2000).

4. We review de novo whether limitations on cross examination were so severe that they violated the Confrontation Clause. *United States v. Bensimon,* 172 F.3d 1121, 1128 (9th Cir.1999).

court decided the motion, however, Phillips testified. During Phillips's cross examination, Zidar's counsel asked a question about Phillips's home mortgage. The government objected, and Zidar's counsel responded in the jury's presence by asserting that his question related to "embezzlement."[5] The district court called a recess to determine whether Zidar's counsel could support this assertion. He could not do so, and he acknowledged that Phillips had been neither charged with, nor convicted of embezzlement. When trial resumed, the district court instructed the jury that Phillips had not been convicted of embezzlement, and that she had not been arrested for narcotics trafficking. Zidar contends that these statements by the district court to the jury were improper.[6]

Zidar's contention that the district court's statements were improper may be analyzed in part by considering whether the statements were correct as a curative instruction. The rule has been long established that a district court may cure the effect of a party's improper comments by "admonishing counsel to refrain from such remarks or by giving appropriate curative instructions to the jury." *United States v. McKoy*, 771 F.2d 1207, 1213 (9th Cir.1985). A curative instruction was permissible here relating to embezzlement because Zidar's counsel had suggested to the jury that Phillips previously had been charged or convicted of embezzlement. Yet, when questioned by the district court outside the jury's presence during recess, Zidar's counsel acknowledged that there were no

charges filed, nor any conviction of Phillips for embezzlement. The district court did not abuse its discretion by instructing the jury that Phillips had never been charged with or convicted of embezzlement or any offense of that nature. *See id.* The district court warned Zidar's counsel not to imply that a witness had committed a criminal act unless he had a "conviction in [his] hand" to prove the implication. The district court was entitled to set the record straight concerning embezzlement by correcting defense counsel's improper questioning and the district court's comments on this were not plain error.

■ It is more difficult, however, to consider the district court's instruction "curative" insofar as it advised the jury that Phillips was not arrested for or charged with drug smuggling and that the only arrest she experienced was related to the charges against Zidar pending in the district court. We consider these statements a comment on evidence. A district court has discretion to comment on the evidence presented at trial, but the district court must make it clear that the jury will determine the facts. *See United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir.2000). Here, the district court instructed the jury to determine the facts. A district court may participate in a witnesses's examination to clarify the evidence or to enforce its evidentiary rulings, *see United States v. Mostella*, 802 F.2d 358, 361 (9th Cir.1986), and here, we conclude that the district court, after giving Zidar's counsel a chance to support the implication that Phillips was

5. Zidar's counsel asked Phillips to describe the terms of her home mortgage. The government objected to the question as irrelevant. Before the district court ruled on the government's objection, Zidar's counsel stated: "It has to do with embezzlement, Your Honor, and I'm going to get there."

6. Usually, we review a district judge's conduct at trial for abuse of discretion. *See United States v. Morgan*, 376 F.3d 1002, 1006–07 (9th Cir.2004). But here, Zidar did not object to the district court's comments contemporaneously, so we review for plain error. *See id.* Zidar concedes that the plain error standard applies here.

guilty of any of the alleged crimes, clarified the facts. *See Sager*, 227 F.3d at 1146. Under these circumstances, the district court's comments were not an abuse of discretion, and in any event they were not plain error.[7]

■ The indictment contained charts listing the alleged facts underlying each count of the indictment. The government's proposed jury instructions contained similar charts. One of the column headings had been changed to read "Nature of Transaction," and the names of the cooperating defendants had been removed, but otherwise the charts in the proposed instructions contained the same information as the charts in the indictment. Over Zidar's objection, the district court included these charts in its final jury instructions, and permitted the jury to refer to them during its deliberations. Zidar urges that this was an abuse of discretion because the charts submitted to the jury were not identical to the charts contained in the indictment.[8]

Although Zidar is correct that the charts submitted to the jury were not copies of the charts from the indictment, the information listed in the jury-instruction charts was drawn from information in the indictment. None of our precedents suggest that a district court lacks discretion to submit a portion of an indictment to a jury. Also, the district court expressly told the jury that: "The indictment is not evidence," which mitigated any prejudice caused by submitting the charts. *See United States v. Utz*, 886 F.2d 1148, 1151–52 (9th Cir.1989) (per curiam). We hold that the district court did not abuse its discretion by allowing the jury to consider charts summarizing the indictment during its deliberations.

■ Before sentencing, Zidar moved for Judge Rothstein, the district judge who presided over his trial, to recuse herself. Twenty years before Zidar's trial, Judge Rothstein and her husband had brought a lawsuit against certain parties involved in a joint venture investment, unrelated to Zidar's case, including claims for fraud and misrepresentation. Zidar speculated that Judge Rothstein might be biased against all fraud defendants, and he questioned Judge Rothstein's ability to preside fairly over his trial. Judge Rothstein declined to recuse herself. Under a local court rule, the recusal motion was referred to Chief Judge Coughenour, who denied the motion, characterizing it as "unfounded and frivolous." On this appeal, Zidar renews his assertion that Judge Rothstein's participation in his case created an appearance of bias. We disagree.[9]

---

7. We will not recognize plain error unless four elements are shown: (1) there is error; (2) that is clear or obvious; (3) that affected substantial rights; and (4) that seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 734–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). We conclude that any error in the scope of the district court's comments did not affect Zidar's substantial rights. The district court instructed the jury that it should not be influenced by the district court's comments or rulings, and we have said that such an instruction mitigates the prejudice caused by any improper comments. *See Morgan*, 376 F.3d at 1008. Moreover, the relevance and weight of the government witness's hearsay recital about his understanding of newspaper articles, which may have been incorrect, is slight compared to the overwhelming substantive evidence of Zidar's complicity in a Ponzi-scheme fraud as proven during his month-long trial.

8. We review a district court's decision to submit copies of an indictment to the jury during deliberations for abuse of discretion. *See United States v. Polizzi*, 500 F.2d 856, 876 (9th Cir.1974).

9. We review a district court's order denying a motion to recuse for abuse of discretion. *See United States v. Silver*, 245 F.3d 1075, 1078

No reasonable person could question Judge Rothstein's impartiality in Zidar's case merely because, twenty years earlier, she may have been a victim of an unrelated, factually dissimilar fraud. There are no similarities between the case to which Judge Rothstein was a party and Zidar's, except that both involved allegations of fraud. Moreover, the fraud action to which Judge Rothstein was a party occurred twenty years before Zidar's trial, and since then Judge Rothstein has presided impartially over "dozens" of cases involving allegations of fraud. The district court did not abuse its discretion by denying Zidar's motion to recuse.

■ Zidar also challenges his sentence.[10] First, Zidar contends that the district court should not have imposed consecutive sentences. The district court sentenced Zidar to a thirty-year term of imprisonment, which the district court considered equivalent to the life sentence recommended by the Guidelines. This sentence was below the statutory maximum of two hundred seventy-five years, but the maximum sentence authorized by any single count of the verdict was twenty years. The district court imposed consecutive sentences to achieve the thirty-year sentence that the district court selected from the recommended Guidelines range. Doing so was not an abuse of discretion. *See United States v. Iniguez,* 368 F.3d 1113, 1116 (9th Cir.2004) (en banc).

■ Second, Zidar contends that the district court should not have considered the possibility, suggested by the govern-

ment, that sentencing Zidar below the recommended Guidelines range might frustrate subsequent fraud prosecutions. But 18 U.S.C. § 3553(a)(2)(B) specifically instructs district courts to consider the deterrent effect of potential sentences, and it was not error for the district court to do so here.

■ Third, Zidar urges that he was entitled to a sentence reduction for acceptance of responsibility. At trial, Zidar repeatedly denied that he intended to defraud anyone. On appeal, Zidar contends that he did not intend to cause financial harm to his investors. The district court's decision that Zidar was not entitled to a sentence reduction for acceptance of responsibility was not clearly erroneous. *See United States v. Weiland,* 420 F.3d 1062, 1080 (9th Cir.2005).

■ Fourth, Zidar argues that the district court improperly applied the abuse of trust sentence enhancement. Zidar told his victims that he was an expert fund manager who had access to uniquely remunerative investment opportunities. From his clients' perspective, Zidar was indistinguishable from a legitimate portfolio manager. The fact that Zidar was not licensed to sell investment advice does not undermine the district court's conclusion that Zidar qualified for the abuse of trust enhancement. *See* U.S.S.G. § 3B1.3 cmt. n. 3; *see also United States v. Barnes,* 125 F.3d 1287, 1292 (9th Cir.1997).

■ Fifth, Zidar contends that the district court erred by applying both the

---

(9th Cir.2001). Recusal is appropriate if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. Wilkerson,* 208 F.3d 794, 797 (9th Cir.2000) (quoting *United States v. Hernandez,* 109 F.3d 1450, 1453 (9th Cir.1997) (per curiam)).

10. We review a district court's interpretation of the Sentencing Guidelines de novo, a district court's application of the Sentencing Guidelines to the facts of a particular case for abuse of discretion, and a district court's factual findings during the sentencing phase for clear error. *See United States v. Cantrell,* 433 F.3d 1269, 1279 (9th Cir.2006).

abuse of trust and the leadership role enhancements. The district court did not err by applying both enhancements because each enhancement reflected a different aspect of Zidar's criminal conduct. *See United States v. Speelman,* 431 F.3d 1226, 1233 (9th Cir.2005).

Finally, Zidar contends that his sentence is invalid in light of the Supreme Court's opinion in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The government concedes that the Sentencing Guidelines were mandatory when the district court sentenced Zidar, and that the district court probably would have imposed a different sentence under advisory Guidelines. We agree, vacate Zidar's sentence, and remand for resentencing in light of *Booker.*

Zidar's conviction is AFFIRMED, his sentence is VACATED, and we REMAND for resentencing.